# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**N.T.**,  by next friend and guardian
**ERIC TRUJILLO**,
a minor, and for similarly situated
minor students,

        Plaintiffs,

      vs.                                    No. CIV 04-0415 MCA/DJS

**ESPANOLA PUBLIC SCHOOLS**,
and **MARY AGNEZ MARTINEZ**,
in her individual capacity,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the following motions:  (1) the parties' *Stipulated Motion to Modify Discovery Deadlines* [Doc. No. 19] filed on December 21, 2004; (2) Defendants' *Motion to Dismiss Claims Against Individual Defendant Under Rule 12(b)(1) for Lack of Jurisdiction or 12(b)(6) for Failure to State a Claim* [Doc. No. 31] filed on March 4, 2005; (3) Plaintiff's *Motion for Extension of Time to File, Respond, and Reply to Pre-Trial Motions* [Doc. No. 34] filed on March 7, 2005; (4) Plaintiff's *First Motion to Amend Complaint* [Doc. No. 36] filed on March 21, 2005; and (5) Plaintiff's *Motion for Extension of Time to File Reply to Defendants' Response to Plaintiff's Motion to Amend and Memorandum in Support* [Doc. No. 46, 48] initially filed on April 29, 2005.  Having

considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court denies Plaintiff's motion to amend the *Complaint*, grants the individual Defendant's motion to dismiss, denies Plaintiff's motions for extensions of time to file, respond, and reply to pretrial motions (other than dispositive motion referenced in the *Order* [Doc. No. 35] filed on March 10, 2005), and denies as moot the stipulated motion to modify discovery deadlines for the reasons set forth below.

## I.    <u>BACKGROUND</u>

On April 14, 2004, Plaintiff filed this civil action against Defendants Espanola Public Schools, Mary Agnes Martinez, and Robert Romero alleging violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(a)(2). [Doc. No. 1, at 9-10] Plaintiff also asserts federal jurisdiction and seeks injunctive relief to enforce a prior administrative ruling pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1487. [Doc. No. 1, at 10.] Plaintiff has filed a separate civil action seeking attorney fees and costs relating to that prior administrative proceeding under the IDEA. [Doc. No. 1 in No. Civ. 04-405 BB/LFG.]

Pursuant to a *Rule 41 Stipulated Notice of Dismissal of Certain Claims* [Doc. No. 28] filed on February 18, 2005, Plaintiff dismissed from the present action all of her claims against Defendants Romero and Martinez, except for her claim for retaliation under the ADA and Section 504 of the Rehabilitation Act against Defendant Martinez in her individual

capacity.  That stipulation is accepted by the Court, and the case caption is modified

accordingly in this *Memorandum Opinion and Order*.

On October 21, 2004, the Court entered an *Initial Pretrial Report* [Doc. No. 16]

setting forth pretrial deadlines pursuant to Fed. R. Civ. P. 16.  The portion of the *Initial*

*Pretrial Report* addressing amendments to pleadings notes that:  "Plaintiff intends to file:

an amended complaint adding claims for attorney fees and costs incurred in the required

administrative proceeding that preceded this action.  In the alternative, Plaintiffs intend to

move to consolidate the currently pending fee case, CIV No. 04-405 BB/LFG, with this

case."  [Doc. No. 16, at 2.]  The portion of the *Initial Pretrial Report* addressing other

pretrial motions notes that:  "Plaintiff intends to file . . . [a] motion for summary judgment.

Defendant intends to file . . . [m]otions for summary judgment and/or for dismissal."  [Doc.

No. 16, at 9.]  The *Initial Pretrial Report* sets a deadline of March 7, 2005, for the filing of

such pretrial motions.  [Doc. No. 16, at 9.]  The parties stipulated in the *Initial Pretrial*

*Report* that the law governing this case is Title II of the ADA and Section 504 of the

Rehabilitation Act.  [Doc. No. 16, at 2.]

This action and Civ. No. 04-405 BB/LFG were consolidated for purposes of a

settlement conference on February 22, 2005.  [Doc. No. 25.]  Case-management deadlines

in Civ. No. 04-405 BB/LFG were abated on February 24, 2005, pending the receipt of

closing documents to settle that case on May 5, 2005.  [Doc. No. 22, 26 in Civ. No. 04-405

BB/LFG.]

Case-management deadlines in this action, however, were not abated, and the parties continued to file and brief motions after the settlement conference.  On December 21, 2004, the parties filed a *Stipulated Motion to Modify Discovery Deadlines.*  [Doc. No. 19.]  That motion appears to have been superseded by a subsequent motion and order extending the deadline for discovery motions until February 25, 2005.  [Doc. No. 26, 27.]  No discovery motions were filed as of the latter date.

Plaintiff also filed other motions to extend other case-management deadlines.  On March 4, 2005, Plaintiff filed a *Motion for Extension of Time to File, Respond and Reply to Dispositive Motions* [Doc. No. 30] seeking an extension of time until April 1, 2005, for the filing of dispositive motions.  Although Plaintiff's motion failed to address the need, if any, to continue the pending trial date, as required by the Court's instructions attached and incorporated in the *Initial Pretrial Report*, the United States Magistrate Judge granted this motion on March 10, 2005.  [Doc. No. 35.]  Plaintiff subsequently filed a motion for partial summary judgment on April 1, 2005.[1]  [Doc. No. 41.]

Plaintiff filed a second *Motion for Extension of Time to File, Respond and Reply to Pretrial Motions* [Doc. No. 34] on March 7, 2004.  Plaintiff's second motion sought an extension of time until April 1, 2004, for "all pretrial motions," rather than just "dispositive motions."  This motion again did not address the need, if any, to continue the pending trial

---

[1]The Court does not rule on Plaintiff's partial summary-judgment motion in this *Memorandum Opinion and Order*.

date, as required by the Court's instructions attached and incorporated in the *Initial Pretrial Report*.

On March 21, 2005, Plaintiff filed her *First Motion to Amend Complaint* [Doc. No. 36]. The proposed *Amended Complaint* attached to Plaintiff's motion does not seek to add a claim for attorney fees and costs incurred in the required administrative proceeding that preceded this action, as contemplated in the section of the *Initial Pretrial Report* concerning amendment of pleadings. Instead, Plaintiff proposes to add entirely new legal theories to her pleading under 42 U.S.C. § 1983. In particular, Plaintiff seeks to add the theory that all or part of the statutory claims in her previous pleading are also actionable under 42 U.S.C. § 1983. She also seeks to add new constitutional claims actionable under 42 U.S.C. § 1983 for violation of the substantive due process and equal protection clauses of the Fourteenth Amendment. On April 29, 2005, Plaintiff filed a motion to extend the time for filing a reply brief on her motion to amend. [Doc. No. 46, 48.]

Defendants oppose Plaintiff's proposed amendments on the grounds that they are futile and untimely. [Doc. No. 44.] Defendants also have filed a motion to dismiss Plaintiff's only remaining claims against Defendant Martinez in her individual capacity. [Doc. No. 31.]

## II.   ANALYSIS

### A.   Plaintiff's Motions for Extensions of Case-Management Deadlines

Motions to modify or extend the case-management deadlines set forth in the *Initial Pretrial Report* are governed by the standard articulated in Fed. R. Civ. P. 16(b) and D.N.M.

LR-Civ. P. 16.1.   See Rowen v. State of N.M., 210 F.R.D. 250, 252 (D.N.M. 2002) (collecting cases).  Fed. R. Civ. P. 16(b) authorizes district courts to issue scheduling orders that limit "the time . . . to join other parties and to amend the pleadings," "file motions," and "complete discovery."  In the District of New Mexico, such orders may take the form of an *Initial Pretrial Report* [Doc. No. 20] filed pursuant to D.N.M. LR-Civ. 16.1.  Under these rules, modification of the deadlines contained in the *Initial Pretrial Report* or in other scheduling orders requires a showing of good cause and Court approval.  See Fed. R. Civ. P. 16(b); D.N.M. LR-Civ. 16.1; Rowen, 210 F.R.D. at 252.

"'The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements.'"  Rowen, 210 F.R.D. at 252 (quoting Bradford v. Dana Corp., 249 F.3d 807, 809 (8th Cir. 2001)).  Under this standard, "the Court may grant leave to modify the pretrial schedule and amend the complaint under Rule 16(b) only if the schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'"  Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir.1992)).  Prejudice to the adverse party is also a factor to be considered.  See Leary v. Daeschner, 349 F.3d 888, 907-08 (6th Cir. 2003).

In this case, the parties' *Stipulated Motion to Modify Discovery Deadlines* [Doc. No. 19] filed on December 21, 2004, is still shown on the Court's docket as a pending motion, although it appears to have been superseded by a subsequent motion and order extending the deadline for discovery motions until February 25, 2005.  [Doc. No. 26, 27.]  In light of the fact that no discovery motions were filed as of the latter date, and the record does not reflect

any pending disputes over compliance with discovery deadlines, I conclude that the parties' *Stipulated Motion to Modify Discovery Deadlines* is moot at this time.  It is therefore unnecessary for the Court to determine whether this motion meets the "good cause" requirements of Fed. R. Civ. P. 16 and D.N.M. LR-Civ. 16.1.

The same is not true of Plaintiff's second *Motion for Extension of Time to File, Respond and Reply to Pretrial Motions* [Doc. No. 34] filed on March 7, 2004.  This motion seeks an extension of time not only for the dispositive motions contemplated in the *Initial Pretrial Report* (*i.e.*, *Plaintiff's Motion for Partial Summary Judgment* [Doc. No.  41] filed on April 1, 2005), but also for "all pretrial motions" (including Plaintiff's *First Motion to Amend Complaint* [Doc. No. 36] filed on March 21, 2005).

Such a broad extension for all pretrial motions, including those directed at amending the pleadings, does not satisfy the "good cause" requirements of Fed. R. Civ. P. 16 and D.N.M. LR-Civ. 16.1 for several reasons.  First, Plaintiff's motion completely fails to address the need for continuing the pending trial date which would follow from such a broad extension.  This failure violates the Court's explicit instructions attached and incorporated in the *Initial Pretrial Report*.  Under these instructions, every motion to extend deadlines must address the need, if any, to continue the pending trial date.  The fact that a motion is unopposed does not excuse parties from complying with this requirement, as unopposed motions are still subject to the "good cause" standard and require Court approval.  <u>See</u> D.N.M. LR-Civ. 16.1.

In order to comply with the Court's instructions attached and incorporated in the *Initial Pretrial Report*, the parties' requests for extensions of deadlines should provide a specific, detailed explanation of why the trial date will or will not be affected, with due consideration of the time needed after completion of briefing for the Court to review all pending motions and reach an informed ruling in advance of the pretrial conference and trial dates.  Such a specific explanation is needed because the case-management deadlines in the *Initial Pretrial Report* are carefully structured so as to give the Court an adequate opportunity to rule on such motions before or during the pretrial conference.  Ruling on the pending motions during that time frame is important because it provides the parties with notice of the Court's decisions and their effect on the issues to be tried before the proposed pretrial order is due, and before the parties begin to face additional deadlines for filing motions in limine, witness lists, and exhibit lists.

Plaintiff's late filing of a motion to amend the pleadings upsets this carefully structured sequence of case-management deadlines, and she has not shown diligence in attempting to meet the existing case-management deadlines with respect to this motion to amend her pleadings.  Her proposed amendments are not based on any new facts that were first disclosed during discovery.  Rather, she wishes only to add new legal theories, and she does not provide a satisfactory explanation of why these new legal theories could not have been raised at an earlier date, or why they were not contemplated and disclosed at the time the parties prepared their respective portions of the *Initial Pretrial Report*.

An extension of time for filing *all* pretrial motions, including those relating to the amendment of pleadings, would be unfairly prejudicial to the non-movant, especially given the pending pretrial conference and trial dates.  In this case, Plaintiff has specifically requested a jury trial.  [Doc. No. 1, 36.]  The trial date is set for August 9, 2005, with a pretrial conference set for July 5, 2005.  [Doc. No. 16, at 10.]  Plaintiff has not moved to continue the trial date, and it is understandable why she would not do so given the time-sensitive nature of some of her claims, which involve lost educational opportunities during the final years of high school.

Under these circumstances, if Plaintiff were allowed to file *all* pretrial motions by April 1, 2005, including the pending motion to amend her pleading, then that would leave approximately three months before the pretrial conference to fully brief the motion to amend, allow the Court to review it and make an informed ruling, allow Defendant to answer any amended pleading, and conduct discovery with respect to the amendments.  This time period would be compressed even further if the Court were to grant an additional extension of time for Plaintiff to file reply briefs outside of the fourteen-day period provided in D.N.M. LR-Civ. 7.6(a).  Moreover, Defendant would be precluded from filing dispositive motions regarding the amendments after completing this process because the deadline for filing such motions would have already expired.  In addition, there would be insufficient time to brief and rule on such additional dispositive motions before the pending pretrial conference and trial dates.

For all of the above reasons, the Court concludes that Plaintiff has not shown good cause for extending the deadline for *all* pretrial motions until April 1, 2005, and therefore her second *Motion for Extension of Time to File, Respond and Reply to Pretrial Motions* [Doc. No. 34] filed on March 7, 2004, must be denied. The April 1, 2005, deadline stated in the *Order* [Doc. No. 35] filed on March 10, 2005, applies to *dispositive* motions, namely *Plaintiff's Motion for Partial Summary Judgment* [Doc. No. 41], and does not include leave to file her *First Motion to Amend Complaint* [Doc. No. 36].

It follows from this ruling that Plaintiff's motion for an additional extension of time to file her reply brief regarding her motion to amend must also be denied. [Doc. No. 46, 48.] While the Court understands that Defendants' response to Plaintiff's motion to amend was not filed until April 15, 2005, [Doc. No. 44], this delay does not provide grounds for granting a further extension until May 16, 2005, for filing a reply brief concerning a motion that is untimely to begin with. The parties are directed to comply with all pretrial deadlines in this case and to seek Court approval by way of a written motion for any filing that may entail an extension of these deadlines or a change in the pretrial conference and trial dates. At this stage of the litigation, any extension of the fourteen-day period that D.N.M. LR-Civ. 7.6(a) provides for the filing of responses and replies will be deemed to interfere with established case-management deadlines, and therefore will require Court approval pursuant to a written motion.

### B.   Plaintiff's Motion to Amend the Complaint

The standard under which a district court reviews a party's amendment of its pleading depends in part on the timing and the scope of the proposed amendment.  Generally, such amendments require leave of the Court if they occur after the filing of a responsive pleading and do not have the written consent of the adverse party.  See Fed. R. Civ. P. 15(a).  Under this standard, leave to amend a pleading "shall be freely given when justice so requires."  Id.; see Foman v. Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

A different standard applies, however, when a party seeks to amend its pleading after the deadlines contained in the Court's scheduling orders have expired.  Motions to amend that require modification of case-management deadlines are governed by the standard articulated in Fed. R. Civ. P. 16(b) and D.N.M. LR-Civ. P. 16.1.  See Rowen, 210 F.R.D. at 252.

Plaintiff's *First Motion to Amend Complaint* [Doc. No. 36] was filed after the deadline for pretrial motions stated in the *Initial Pretrial Report* [Doc. No. 16].  The deadline stated in the *Initial Pretrial Report* applies to this motion because, in the previous section of this *Memorandum Opinion and Order*, the Court has denied Plaintiff's motion to extend the deadline for filing pretrial motions (other than Plaintiff's dispositive motion for partial summary judgment) until April 1, 2005.

Moreover, even if Plaintiff's motion to amend her pleading were accepted as timely filed, the relief requested therein necessarily entails the modification of other pretrial

deadlines insofar as the proposed amendment would require the Court to grant Defendants a fair opportunity to answer, conduct discovery, and file dispositive motions regarding any amendments in advance of the currently scheduled trial date. I do not accept Plaintiff's view that no such opportunity is required because the proposed amendments assert new legal theories instead of new factual allegations. The essential elements of these new legal theories, as well as the available remedies and defenses, may differ from those asserted in Plaintiff's previous pleading, and Defendants must be afforded a fair opportunity to defend against such new theories.

This is particularly true of the constitutional claims asserted for the first time in Plaintiff's proposed *Amended Complaint*, for which defenses such as qualified immunity, if raised, must be resolved as early as possible in the litigation and may entitle an individual Defendant to a stay of discovery. See generally Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992) (citing Siegert v. Gilley, 500 U.S. 226 (1991)). Plaintiff may not avoid the consequences of an individual Defendant's assertion of such defenses by temporarily withholding claims under 42 U.S.C. § 1983 until other objectives of the litigation have been completed, and then asserting such claims at the last minute after an individual Defendant already has been subjected to the demands of the litigation and no longer has sufficient time before the scheduled pretrial conference and trial dates to file and brief dispositive motions.

It follows from the above analysis that Plaintiff's motion to amend entails a modification of existing case-management deadlines and must therefore be reviewed under the "good cause" standard of Fed. R. Civ. P. 16 and D.N.M. LR-Civ. 16.1, rather than the

more liberal standard of Fed. R. Civ. P. 15(a).  For the reasons previously stated with respect

to Plaintiff's second *Motion for Extension of Time to File, Respond and Reply to Pretrial*

*Motions* [Doc. No. 34], Plaintiff has not shown good cause for permitting her proposed

amendments to be filed at this late date.  I find no reason why the new legal theories

advanced in these proposed amendments could not have been raised at a much earlier date

within the existing case-management dates.  I also find that such a late amendment would

be unfairly prejudicial to Defendants, especially in light of Plaintiff's failure to address how

Defendants can be provided with a fair opportunity to respond and prepare defenses to the

proposed amendments in advance of the pending pretrial conference and trial dates.

      In this regard, the Tenth Circuit has recognized that:

> A busy district court need not allow itself to be imposed upon by the
> presentation of theories seriatim.   Liberality in amendment is important to
> assure a party a fair opportunity to present his claims and defenses, but 'equal
> attention should be given to the proposition that there must be an end finally
> to a particular litigation.'

Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting Freeman v.

Continental Gin Co., 381 F.2d 459, 469-70 (5th Cir.1967)).  Applying these principles to this

case, I find that Plaintiff's proposed amendments are untimely.

      In addition to concluding that Plaintiff's motion to amend falls short of the "good

cause" standard contained in Fed. R. Civ. P. 16 and D.N.M. LR-Civ. 16.1, I also conclude

that it would be futile to permit Plaintiff to assert in an amended pleading that all or part of

her existing statutory claims under the IDEA, ADA, and/or Section 504 of the Rehabilitation

Act are also actionable under 42 U.S.C. § 1983.  A motion to amend a complaint is futile if,

notwithstanding the amendment, the complaint "would be subject to dismissal." Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999). Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the proposed amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384. "In addition to the complaint, the [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).

Plaintiff's existing pleading asserts federal jurisdiction and seeks injunctive relief to enforce the result of a prior administrative proceeding under the IDEA. 42 U.S.C. § 1983 can add nothing to an IDEA claim because the Tenth Circuit has expressly held that this statute "may not be used to remedy IDEA violations." Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1273 (10th Cir. 2000). In support of this holding, the Tenth Circuit reasoned that since Congress amended the IDEA in 1986, the Supreme Court has nevertheless cited the statute

on at least two occasions "as an example of an exhaustive legislative enforcement scheme that precludes § 1983 causes of action." Id. (citing  Blessing v. Freestone, 520 U.S. 329, 347-48 (1997), and  Wright v. City of Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 423-24 (1987)).

Plaintiff also may not use 42 U.S.C. § 1983 as a mechanism for asserting claims for violations of Section 504 of the Rehabilitation Act or Title II of the ADA.  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2001) (collecting cases).  Like the IDEA, the ADA and  the  Rehabilitation  Act  provide  "'specific  comprehensive  internal  enforcement mechanism[s] to protect  the rights'" of the statutes' intended beneficiaries,  and "'Congress intended to foreclose resort to the more general enforcement provisions of section 1983 to vindicate the rights created by'" these statutes.  Id. (quoting Lollar v. Baker, 196 F.3d 603, 609-10 (5th Cir.1999)); see also Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc); Holbrook v. City of  Alpharetta, 112 F.3d 1522, 1531 (11th Cir.1997); Sellers v. The Sch. Bd. of the City of Manassas, 141 F.3d 524, 530-32 (4th Cir. 1998).  The Supreme Court's recent opinions in Rancho Palos Verdes v. Abrams, 125 S. Ct. 1453, 1462 (2005), and Gonzaga v. Doe, 536 U.S. 273, 289-90 (2002), lend further support to this conclusion.

In light of these authorities, I conclude that Congress did not intend to impose an additional unfunded mandate on schools by making violations of Title II of the ADA and Section 504 of the Rehabilitation Act subject to the broader scope of damages available

under 42 U.S.C. § 1983.  For all of the above reasons, Plaintiff's *First Motion to Amend Complaint* [Doc. No. 36] is denied.

### C.    Motion to Dismiss Claims Against Defendant Martinez

Defendant Martinez moves to dismiss the only remaining claim Plaintiff has asserted against her in her individual capacity:  a claim for retaliation in violation of the ADA and Section 504 of the Rehabilitation Act.  Defendant Martinez moves to dismiss this retaliation claim on two grounds:  (1) the Court lacks jurisdiction over this claim because Plaintiff failed to exhaust her administrative remedies against Defendant Martinez; and (2) Plaintiff fails to state a retaliation claim against Defendant Martinez in her individual capacity because neither the ADA nor Section 504 of the Rehabilitation Act provide for such claims against individual Defendants.

I find it unnecessary to address Defendant Martinez's arguments regarding exhaustion of administrative remedies because I conclude that Plaintiff has failed to state a retaliation claim against this Defendant upon which relief can be granted under the ADA or Section 504.  As noted in the previous discussion of Plaintiff's motion to amend her pleading, I conclude that 42 U.S.C. § 1983 does not provide a viable mechanism for enforcing statutory claims under the ADA, IDEA, or Section 504 of the Rehabilitation Act, and I will not permit Plaintiff to amend her pleading by adding new constitutional claims at this late stage of the litigation.  It follows from these rulings that none of Plaintiff's claims against Defendant Martinez in her individual capacity can be premised on 42 U.S.C. § 1983.

-16-

I review Defendant Martinez's motion to dismiss the remaining retaliation claim asserted in Plaintiff's original *Complaint* under the standard provided in Fed. R. Civ. P. 12(b)(6).  As noted above, dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  GFF Corp., 130 F.3d at 1384 (quoting Conley, 355 U.S. at 45-46).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  Miller, 948 F.2d at 1565.  Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  GFF Corp., 130 F.3d at 1384.

Applying this standard, I conclude that neither Section 504 of the Rehabilitation Act nor the relevant provisions of the ADA provide for retaliation claims against individual defendants sued in their personal capacities.  This conclusion follows the majority view expressed by other courts and accords with the principles of statutory interpretation set forth by the Supreme Court in Barnes v. Gorman, 536 U.S. 181 (2002), and United States Dep't of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597 (1986).

Section 504 of the Rehabilitation Act (as well as the relevant provisions of the IDEA) invoke "Congress's power under the Spending Clause, U.S. Const., Art. I, § 8, cl. 1, to place conditions on the grant of federal funds."  Barnes, 536 U.S. at 185-86; see Sellers, 141 F.3d at 531 ("IDEA is a joint federal-state program enacted under Congress' spending power.");

Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 113 (2d Cir. 2001) (concluding that "§ 504 was enacted pursuant to Congress's authority under the Spending Clause of Article I").  As such, these statutes are characterized as "'much in the nature of a contract:  in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'" Barnes, 536 U.S. at 186 (quoting Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981)); see also Paralyzed Veterans, 477 U.S. at 605-06; cf. Jackson v. Birmingham Bd. of Educ., 125 S. Ct. 1497, 1508-09 (2005) (applying Spending Clause principles to suit against funding recipient under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a)).  Under the contract-law principles applied by the Supreme Court in this context, the proper defendant in a suit under such Spending Clause legislation is the public entity, program, or activity that is the recipient of the federal funds, not its employees.

This conclusion follows from the basic distinction between the *recipients* of federal funds and the *beneficiaries* of such funds which the Supreme Court articulated in Paralyzed Veterans, 477 U.S. at 605-11, and its progeny.  Under this distinction, the liability that may be imposed by the Spending Clause legislation at issue here does not follow the federal funding "'past the recipient to those who merely benefit from the aid.'"  United States v. LaHue, 170 F.3d 1026, 1029 (10th Cir. 1999) (quoting Paralyzed Veterans, 477 U.S. at 607); accord Gallagher v. Croghan Colonial Bank, 89 F.3d 275, 278 (6th Cir.1996).  Thus, "[e]mployees of the recipients of federal financial assistance are not in themselves the recipients of such assistance."  Grzan v. Charter Hosp., 104 F.3d 116, 119-20 (7th Cir.

1997).  Because they are not recipients of such assistance, such employees are not subject to suit in their personal capacity under the Spending Clause legislation at issue here.  See id.

The Tenth Circuit has pointed out that "if the statutes were construed to extend to all those who receive an indirect economic benefit from the federal assistance, '[t]he statutory "limitation" on [the anti-discrimination statute's] coverage would virtually disappear, a result Congress surely did not intend.'"  LaHue, 170 F.3d at 1030 (quoting Paralyzed Veterans, 477 U.S. at 609).  Allowing such statutory limitations to disappear in this manner by ignoring the distinction between *recipients* and *beneficiaries* of federal funds would also run contrary to the principles articulated in Barnes, 536 U.S. at 186-87.  Under these principles, the conditions that Congress intends to impose on the grant of federal funds must be stated unambiguously so as to support the conclusion that the recipient of the funds accepted those conditions knowingly and voluntarily.  The Spending Clause legislation at issue in this case does not set forth an unambiguous condition that would impose liability on individual employees in their personal capacity.  Based on the authorities cited above, I conclude as a matter of law that neither Section 504 of the Rehabilitation Act nor the relevant provisions of the IDEA provide a basis for holding Defendant Martinez liable in her personal capacity under the circumstances alleged in this case because she is not a recipient of federal funds.

Plaintiff's retaliation claim under the ADA requires separate analysis because, in enacting Title II of the ADA, Congress did not expressly rely on the Spending Clause and instead invoked its authority under the Commerce Clause and Section 5 of the Fourteenth Amendment.  See 42 U.S.C. § 12101(b)(4); Thompson v. Colorado, 278 F.3d 1020, 1026

(10th Cir. 2001); Davoll v. Webb, 194 F.3d 1116, 1142 (10th Cir. 1999); cf. Schrader v. Ray, 296 F.3d 968, 974 (10th Cir. 2002) (contrasting "the blanket involuntary coverage of the ADA" with "the Rehabilitation Act's coverage [which] extends only to entities that choose to receive federal assistance."). This lack of a specific nexus to federal funding does not mean that the scope of liability under the ADA is limitless, however, because several provisions of the ADA specifically rely upon and incorporate the remedies and procedures of other statutes.

In the context of employment discrimination, for example, the Tenth Circuit has concluded that Title I of the ADA precludes personal capacity suits against individuals who do not otherwise qualify as "employers" under the relevant statutory definition of that term. See Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999). While Butler is distinguishable to some degree because it involved Title I of the ADA rather than Title II or the prohibition on retaliation contained in 42 U.S.C. § 12203(a), the principles of statutory interpretation used in that case lead to the same conclusion with regard to the issue presented here.

In Butler, 172 F.3d at 744, the Tenth Circuit drew a parallel between Title I of the ADA and Title VII of the Civil Rights Act, noting that the two statutes share common features that operate to preclude employment-discrimination suits against individual employees in their personal capacity. In the present case, I draw a similar parallel between the relevant provisions of the ADA and two other statutes, namely Section 504 of the Rehabilitation Act and Title VI of the Civil Rights Act. As noted by the Supreme Court,

-20-

> Section 203 of the ADA declares that the "remedies, procedures, and rights set forth in [§ 505(a)(2) of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides" for violations of § 202.  42 U.S.C. § 12133.  Section 505(a)(2) of the Rehabilitation Act, in turn, declares that the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available" for violations of § 504, as added, 92 Stat. 2983, 29 U.S.C. § 794a(a)(2).  Thus, the remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits racial discrimination in federally funded programs and activities.

Barnes, 536 U.S. at 185.  For these reasons, it is appropriate to interpret the remedies and procedures available under Title II of the ADA in a manner that parallels the interpretation of Section 504 of the Rehabilitation Act and Title VI of the Civil Rights Act.

As noted above, Section 504 and Title VI are Spending Clause legislation and do not provide a basis for personal-capacity suits against individual employees.  See Grzan, 104 F.3d at 119-20. Thus, insofar as the relevant provisions of the ADA incorporate the same remedies, procedures, and rights available under Section 504 and Title VI, see 42 U.S.C. §§ 12133, 12203(c), the former statute does not provide a basis for imposing liability on individuals in their personal capacity.  Cf. Butler, 172 F.3d at 744 (drawing a similar conclusion based on parallels between Title I of the ADA and Title VII of the Civil Rights Act).

Such an interpretation accords with the plain language of Title II of the ADA, which only imposes duties on "public entities."  See 42 U.S.C. § 12132.  "That term, as it is defined within the statute, does not include individuals."  Alsbrook, 184 F.3d at 1008 n.8 (citations omitted); accord Miller v. King, 384 F.3d 1248, 1276-78 (11th Cir. 2004); Garcia, 280 F.3d

at 107; <u>Khan v. Albuquerque Pub. Sch.</u>, No. CIV 03-118 JP/RLP, slip. op. at 5-7 (D.N.M. May 22, 2003) (unpublished memorandum opinion and order dismissing ADA claims against individual defendant).

Plaintiff points out that the ADA's anti-retaliation provision is not contained in Title II, and it prohibits retaliation by "persons" rather than just "public entities" or "employers." <u>See</u> 42 U.S.C. § 12203(a).  Some courts have inferred that by using the word "persons" in this provision, Congress must have intended to allow the pleading of an ADA retaliation claim against individual defendants in their personal capacity.[2]  <u>See, e.g.</u>, <u>Shotz v. City of Plantation</u>, 344 F.3d 1161, 1179-80 (11th Cir. 2003).  Other courts have reached the opposite conclusion, reasoning that the use of the word "person" in 42 U.S.C. § 12203(a) cannot be read in isolation, but must be viewed in the context of the statute as a whole, including the specific remedies and procedures cited in 42 U.S.C. § 12203(c).  <u>See</u> <u>Key v. Grayson</u>, 163 F. Supp. 2d 697, 703-04 (E.D. Mich. 2001) (collecting cases).

Even the courts that recognize personal-capacity suits in this context acknowledge that congressional intent with respect to retaliation claims is by no means obvious from the plain language of the statute.   Indeed, the <u>Shotz</u> court found that the ADA's retaliation provision

---

[2]Plaintiff cites an unpublished order and judgment of the Tenth Circuit in support of her ADA retaliation claim.  <u>See</u> <u>Childs v. Nat'l Jewish Ctr. for Immunology and Respiratory Med.</u>, 129 F.3d 130, 1997 WL 694606 (10th Cir. 1997).  I find that this unpublished order and judgment has no persuasive value because it does not address many of the arguments raised by the more recent authorities cited in this *Memorandum Opinion and Order*, and because it involved the *sua sponte* dismissal of a *pro se* litigant's claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B), for which no adequate record was developed in the trial court.

is "inscrutable," and that "Congress's intent [is] cryptic and imprecise," with respect to whether the scope of liability for retaliation claims is defined by the "rights creating" language in 42 U.S.C. § 12203(a), or by the language setting forth the available remedies and procedures in 42 U.S.C. § 12203(c).  Shotz, 344 F.3d at 1177.

In the context of public services, the latter provision simply incorporates the remedies and procedures that would be available under Title II of the ADA in this context.  See Van Hulle v. Pacific Telesis Corp., 124 F. Supp. 2d 642, 646 (N.D. Cal. 2000) (citing 42 U.S.C. § 12133).  As noted above, the remedies and procedures available under Title II of the ADA are a lawsuit against either a "public entity," or a "'head of department, agency, or unit' sued in his official capacity," rather than a lawsuit against an individual in his or her personal capacity.  Key, 163 F. Supp. 2d at 704 (citing 42 U.S.C. §§ 12203(c), 12133, 29 U.S.C. § 794a, and quoting 42 U.S.C. § 2000e-16).  Thus, if 42 U.S.C. § 12203(c) determines the scope of liability for ADA retaliation claims, then the Court would simply follow the general rule applied in the context of litigation over public services under Title II of the ADA, which does not extend liability to individuals sued in their personal capacities.  See Van Hulle, 124 F. Supp. 2d at 646.

The Shotz court chose a more complicated route and arrived at the conclusion that the ADA's retaliation provision was intended to go further than the Spending Clause legislation referenced in Title II and could provide an independent basis for imposing liability on persons in their individual capacity.  See Shotz, 344 F.3d at 1179-80.  This choice runs contrary to the reasoning of the majority of other courts that have addressed the issue

because it unties the ADA's retaliation provision from the specific remedies and procedures provided elsewhere in the statute.  See Baird v. Rose, 192 F.3d 462, 472 (4th Cir.1999); Key, 163 F. Supp. 2d at 704; Van Hulle, 124 F. Supp. 2d at 645-46; Santiago v. City of Vineland, 107 F. Supp. 2d 512, 551-52 (D.N.J. 2000); Stern v. California State Archives, 982 F. Supp. 690, 694 (E.D. Cal. 1997);  Cable v. Department of Developmental Svcs., 973 F. Supp. 937, 943 (C.D. Cal. 1997);  Kautio v. Zurich Ins. Co., No. 97-2411, 1998 WL 164623, at *1-2 (D.Kan. Mar.18, 1998) (unpublished disposition).

The Shotz court also did not address the constitutional questions presented by a construction of the statute that allows any person to be held liable in his or her individual capacity regardless of the context in which the retaliation occurred.  Some courts have questioned whether other provisions of the ADA are a valid exercise of congressional power under the Commerce Clause or Section 5 of the Fourteenth Amendment.  See, e.g., Thompson, 278 F.3d at 1034 (concluding, in context of Eleventh Amendment immunity, that a particular application of Title II of the ADA was not a valid exercise of congressional power under Section 5 of the Fourteenth Amendment); Cochran v. Pinchak, 401 F.3d 184, 191 (3rd Cir. 2005) (same); Alsbrook, 184 F.3d at 1010 (same); Garcia, 280 F.3d at 109-10 (same); Miller, 384 F.3d at 1275-76 (same);  Klingler v. Director, Dep't of Revenue, 366 F.3d 614, 616-20 (8th Cir. 2004) (concluding that a particular application of Title II of ADA was not valid exercise of congressional power under the Commerce Clause); McCarthy v. Hawkins, 381 F.3d 407, 435 (5th Cir. 2004) (Garza, J., concurring in part and dissenting in part) (expressing a similar view).

The <u>Shotz</u> court's construction of the ADA's retaliation provision raises such questions because it unties the prohibition on retaliation stated in 42 U.S.C. § 12203(a) from the remedies and procedures cited in 42 U.S.C. § 12203(c).

> Section 12203(c) indicates that the remedy a retaliation claimant is afforded depends on whether the alleged retaliation occurred with respect to employment, public services or public accommodations.   For instance, a claimant "who complains that a 'person' retaliated against him or her in the context of employment is referred to Section 12117," which is the remedial provision for Subchapter I.  <u>Stern</u>, 982 F.Supp. at 693.  In the same fashion, a claimant asserting that a "person" retaliated against him or her in the context of public services is referred to Section 12133, the remedial provision for Subchapter II.  <u>Id.</u>  "An aggrieved party who complains that a 'person' retaliated against him or her in the context of public accommodation is referred to Section 12188," the remedial provision for Subchapter III.

<u>Van Hulle</u>, 124 F. Supp. 2d at 646.  Thus, if 42 U.S.C. § 12203(a) is untethered from 42 U.S.C. § 12203(c), then liability for retaliation claims is no longer limited to the specific contexts of employment, public services, and public accommodations that are set forth elsewhere in the ADA.  Without this limitation, it becomes more difficult to establish the interstate nexus that is required to ensure that the ADA's retaliation provisions are a valid exercise of Congress' authority under the Commerce Clause, <u>see</u> <u>Klingler</u>, 366 F.3d at 617-20, and to establish the nexus with the rights guaranteed by the Fourteenth Amendment that is required to render these provisions a valid exercise of Congress' enforcement powers, <u>see</u> <u>Thompson</u>, 278 F.3d at 1028-34.

It is a basic principle of statutory interpretation that "'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the Court's] duty is to adopt the latter.'"

Jones v. United States, 526 U.S. 227, 239 (1999) (quoting United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909)).  Applying the above principles of statutory interpretation to this case, I conclude that the more logical and consistent reading of the ADA is to determine the scope of liability for retaliation claims by reference to the language setting forth the available remedies and procedures,  42 U.S.C. § 12203(c), rather than viewing the language in the retaliation provision alone,  42 U.S.C. § 12203(a).

This reading avoids the doubtful constitutional questions created by viewing 42 U.S.C. § 12203(a) in isolation, because it limits the scope of liability according to existing remedies and procedures available in the specific contexts of employment, public services, and public accommodations that are set forth elsewhere in the ADA and the other statutes cited therein.  Courts are more likely to uphold the constitutionality of legislation enacted under Section Five of the Fourteenth Amendment when the statutory goal, *i.e.*, prohibiting retaliation, is closely linked to specific, well-established remedies and procedures for achieving this goal.  See, e.g., Tennessee v. Lane, 541 U.S. 509, 124 S. Ct. 1978, 1993 (2004) (declining to consider Title II of the ADA in the context of public education but finding that a portion of the statute "unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services").  Such linkage ensures "'a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'"  Id. at 1978 (quoting City of Boerne v. Flores, 521 U.S. 507, 520 (1997)).  Similarly, the interstate-nexus requirement required for a valid exercise of

Congress' power under the Commerce Clause is more easily satisfied if the statutory goals are placed in a specific context, such as employment.  See, e.g., United States v. Miss. Dep't of Pub. Safety, 321 F.3d 495, 501 (5th Cir. 2003) (concluding that the ADA's regulation of the national employment market is a valid exercise of Congress' power under the Commerce Clause).

Because I do not read 42 U.S.C. § 12203 as expanding the scope of liability under the ADA to cover persons sued in their individual capacity, I conclude that Defendant Martinez is entitled to summary judgment on Plaintiff's retaliation claim under the ADA.  I similarly conclude that Section 504 of the Rehabilitation Act does not provide for retaliation claims against persons in their individual capacity, and therefore Defendant Martinez is entitled to summary judgment on that claim as well.  There being no other remaining claims against Defendant Martinez in this case, she is dismissed from this lawsuit.

## III.   **CONCLUSION**

For the foregoing reasons, the Court grants Defendant Martinez's motion to dismiss, denies Plaintiff's motion to amend her *Complaint*, denies Plaintiff's motion for an extension of the deadline for pretrial motions, responses, and replies (other than the extension previously granted for her motion for partial summary judgment), and denies as moot the parties' stipulated motion to extend discovery deadlines.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Extension of Time to File Reply to Defendants' Response to Plaintiff's Motion to Amend and Memorandum in Support* [Doc. No. 46, 48] is **DENIED**.

-27-

**IT IS FURTHER ORDERED** that Plaintiff's *First Motion to Amend Complaint* [Doc. No. 36] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion for Extension of Time to File, Respond, and Reply to Pre-Trial Motions* [Doc. No. 34] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Dismiss Claims Against Individual Defendant Under Rule 12(b)(1) for Lack of Jurisdiction or 12(b)(6) for Failure to State a Claim* [Doc. No. 31] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties' *Stipulated Motion to Modify Discovery Deadlines* [Doc. No. 19] filed on December 21, 2004, is **DENIED AS MOOT**.

**SO ORDERED** this 20th day of May, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**