IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**N.T.**,  by next friend and guardian
**ERIC TRUJILLO**,

       Plaintiff,

    vs.                                No. CIV 04-0415 MCA/DJS

**ESPANOLA PUBLIC SCHOOLS**,

       Defendants.


<u>**MEMORANDUM OPINION AND ORDER**</u>


**THIS MATTER** comes before the Court on the Court's *sua sponte* inquiry regarding subject-matter jurisdiction and the following motions:  (1) *Plaintiffs' Motion for Partial Summary Judgment as to Liability* [Doc. No. 41] filed on April 1, 2005; (2) *Defendants' First Motion in Limine to Exclude Evidence Relating to Emotional Distress* [Doc. No. 33] filed on March 4, 2005; and (3) *Defendants' First Motion in Limine to Exclude Evidence Relating to Punitive Damages* [Doc. No. 32] filed on March 4, 2004.  Having considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court denies Plaintiff's motion for partial summary judgment, grants in part and denies in part the motion in limine regarding emotional distress, and grants the motion in limine regarding punitive damages with respect to Defendant Espanola Public Schools (EPS).  Insofar as the above motions pertain to Defendant Mary Agnes Martinez, they are deemed moot on the

grounds that the Court has previously dismissed all remaining claims against Defendant Martinez.[1]  Based on my *sua sponte* inquiry concerning subject-matter jurisdiction, I also order the parties to show cause in writing by no later than June 28, 2005, why Plaintiff's claim for an injunction to "enforce" the equitable relief awarded by the Administrative Appeal Officer (AAO) should not be dismissed for lack of subject-matter jurisdiction.

I.    **BACKGROUND**

The history of this litigation is set forth in the Court's *Memorandum Opinion and Order* [Doc. No. 52] filed on May 20, 2005.  As a result of that ruling, EPS is the only remaining Defendant in this case, and Plaintiff's remaining claims against Defendant EPS are limited to the following:   (1) a claim for monetary damages based on alleged discrimination and retaliation under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, (2) a claim for monetary damages based on alleged discrimination and retaliation under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(a)(2); and (3) a claim for an injunction to enforce equitable relief (in the form of compensatory educational services) that was previously awarded by the AAO in an administrative proceeding arising from related claims under the Rehabilitation Act and the Individuals with

_____

[1]The Court notes that while Plaintiff's *Complaint* is written in the singular form, her motion for summary judgment is written in the plural form, as if there were more than one Plaintiff.  Because no independent claims are asserted by Plaintiff's parent, Eric Trujillo, apart from his status as next friend and guardian of N.T., the Court refers to Plaintiff in the singular form throughout this *Memorandum Opinion and Order*.

-2-

Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1487.[2]  If Plaintiff prevails on one or more of the above claims, she will then request an award of attorney fees and costs as well as pre-judgment and post-judgment interest.  [Doc. No. 1, at 10-11.]

Defendants filed their motions in limine regarding punitive damages and emotional distress on March 4, 2005.  Plaintiff filed her motion for partial summary judgment as to liability on April 1, 2005.  All of these motions relate to Plaintiff's claims for monetary damages and do not directly concern Plaintiff's claim for an injunction to enforce the equitable relief previously awarded by the AAO.

While disputing the AAO's findings of fact and legal conclusions, Defendant EPS has expressed a willingness to comply with the AAO's award of compensatory educational services.  [Doc. No. 45, at 7, 14.]   While her *Complaint* explicitly invokes this Court's jurisdiction under a provision of the IDEA and refers to an "appeal" from the AAO's decision [Doc. No. 1, at ¶ 1], Plaintiff has now abandoned any claim for judicial review of the AAO's decision and does not assert that she is aggrieved by that decision.  She describes that decision as "favorable" to her, and disclaims any intention to pursue judicial review of the AAO's decision in this civil action.  [Doc. No. 41, at 15; Doc. No. 49, at 1-2.]

In her motion for summary judgment, however, Plaintiff invokes the doctrine of collateral estoppel, or issue preclusion, and seeks to use certain findings of fact and

---

[2]The IDEA was amended in 2004, but these amendments do not become effective until July 1, 2005.  See Pub. L. No. 108-446, 118 Stat. 2715 (2004).  Therefore, all references to the IDEA in this *Memorandum Opinion and Order* concern the version of the statute in effect before July 1, 2005.

conclusions of law contained in the AAO's decision to preclude Defendant EPS from contesting its liability for monetary damages caused by its alleged discrimination and retaliation in violation of the ADA and the Rehabilitation Act.  In the alternative, Plaintiff asserts that the evidence which supports the AAO's findings also supports summary judgment in her favor in this civil action.  The only evidence cited and submitted in support of Plaintiff's motion, however, is a copy of the AAO's decision itself.  [Doc. No. 43.]  The statement of facts accompanying Plaintiff's motion consists almost entirely of statements cited or quoted from the AAO's decision.  [Doc. No. 41, at 3-15.]

Defendants contend that the doctrine of collateral estoppel does not apply to the findings or conclusions contained in the AAO's decision.  They also point out that the AAO's review of the record was preceded by an evidentiary hearing before a Due Process Hearing Officer (DPHO).  Defendants have attached a copy of the DPHO's decision to their response brief, which shows that the respective decisions of the DPHO and the AAO differ in several significant respects.  [Ex. A to Doc. No. 45.]  According to Defendants, these differences show that the AAO's decision was not based on undisputed facts which would entitle Plaintiff to summary judgment.

Defendants also have filed two motions in limine in which they respectively assert that the scope of monetary damages available in civil actions under the ADA and Section 504 of the Rehabilitation Act does not extend to punitive damages or damages for emotional distress.  [Doc. No. 32, 33.]  Based on this assertion, they contend that the Court should exclude any evidence that is offered for the purpose of proving punitive damages or damages

-4-

for emotional distress.  Plaintiff opposes Defendants' motions in limine.  [Doc. No. 38, 39.] Plaintiff seeks to broaden the scope of monetary damages and contends that evidence concerning emotional distress and Defendants' mental state may be offered for other admissible purposes.

## II.   ANALYSIS

### A.   Plaintiff's Claim for Injunctive Relief

As noted above, there does not appear to be any remaining controversy at this time concerning Defendant EPS's compliance with the AAO's award of compensatory educational services to Plaintiff.  The apparent absence of such a controversy causes this Court to inquire *sua sponte* whether it has subject-matter jurisdiction over Plaintiff's claim for an injunction to enforce the AAO's award.

While her *Complaint* explicitly invokes this Court's jurisdiction under a provision of the IDEA and refers to an "appeal" from the AAO's decision [Doc. No. 1, at ¶ 1], Plaintiff's motion papers expressly disclaim any intention to seek judicial review of the AAO's decision and instead characterize that decision as "favorable" to her.  [Doc. No. 41, at 15; Doc. No. 49, at 1-2.]  In light of these statements in Plaintiff's motion papers, I conclude that Plaintiff has abandoned any claim for judicial review of the AAO's decision and is not "aggrieved" by that decision within the meaning of the IDEA.  See 20 U.S.C. § 1415(i)(2)(A).

Insofar as Plaintiff is not "aggrieved" by the result of these administrative proceedings, the IDEA does not provide her with the right to bring a civil action for judicial review of her IDEA complaint.  See id.; Robinson v. Pinderhughes, 810 F.2d 1270, 1275 (4th

Cir. 1987). I recognize that there may be contrary authority suggesting that a student remains aggrieved when the school district refuses to comply with a decision of an administrative agency that is favorable to the student, see Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 115-16 (1st Cir. 2003), or that such non-compliance can instead be addressed under 42 U.S.C. § 1983, see Robinson, 810 F.2d at 1274-75. But in this case Plaintiff has presented no evidence of such a refusal by Defendant EPS. Rather, Defendant EPS has represented in its briefs that it is prepared to provide Plaintiff with the compensatory educational services awarded by the AAO and that Plaintiff has thus far declined to avail herself of such services. [Doc. No. 45, at 7, 14.]

IDEA plaintiffs are not exempt from the requirements of standing under Article III of the United States Constitution, see Yamen v. Bd. of Educ. of Arlington Central Sch. Dist., 909 F. Supp. 207, 209-10 (S.D.N.Y. 1996), and in this case there does not appear to be any remaining "case or controversy" under Article III with respect to Defendant EPS's compliance with the AAO's award. I therefore direct the parties to show cause in writing by no later than June 28, 2005, why this Court should not dismiss Plaintiff's claim for an injunction to enforce the AAO's award of equitable relief without prejudice for lack of subject-matter jurisdiction. The parties' written responses on this issue should also address whether there remains any viable claim for judicial review of the AAO's decision under the standards articulated in the IDEA, 20 U.S.C. § 1415(i)(2)(B).

**B.**    **Plaintiff's Motion for Partial  Summary Judgment**

Under Fed. R. Civ. P. 56, the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  See id. at 248.

When a motion under Fed. R. Civ. P. 56 pertains to a claim or defense for which the movant does not bear the burden of proof at trial, judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of that claim or defense.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).  On the other hand,  when the movant is also the party bearing the burden of persuasion at trial on the claim for which he or she is seeking summary judgment, the movant must show that the record as a whole satisfies each essential element of his or her case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party.  See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir. 1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

The Court may, however, consider statements which are not offered for the truth of the matter asserted if they have some other admissible purpose.  Under the doctrines of collateral estoppel and *res judicata*, for example, legal consequences may flow from the fact that the AAO or the DPHO entered decisions containing statements which signaled that they had considered certain issues.  Even if the truth of such statements is disputed, I may still consider them as verbal acts or operative facts insofar as legal consequences flow from their utterance.  See generally Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001).

At this juncture, my reference to such statements is not intended to suggest that this Court is making independent factual findings about the weight of the disputed evidence discussed in the written decisions of the administrative tribunals, as it is not this Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.[3]  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

In her motion for partial summary judgment, Plaintiff first asserts that the doctrine of collateral estoppel, or issue preclusion, bars Defendant EPS from contesting its liability for monetary damages caused by discrimination and retaliation under Section 504 of the Rehabilitation Act and Title II of the ADA.  Defendants respond that the doctrine of *res judicata*, or claim preclusion, bars Plaintiff from asserting new claims in this civil action that were not previously asserted in the administrative proceedings before the DPHO.

I do not rule out the possibility that either of these preclusion doctrines could apply to certain administrative proceedings under the ADA or the Rehabilitation Act in other

---

[3]A different standard applies if the Court is conducting judicial review of the record of an administrative proceeding under the IDEA.  See 20 U.S.C. § 1415(i)(2)(B).  As noted in Section II.A of this *Memorandum Opinion and Order*, that standard does not apply here because Plaintiff has abandoned her claim for judicial review of the AAO's decision under the IDEA and does not claim to be aggrieved by that decision.

-9-

contexts.  Under the particular circumstances of this case, however, I conclude that the results of such administrative proceedings do not have a preclusive effect on the specific claims which are the subject of Plaintiff's motion for summary judgment in this civil action. I reach this conclusion not only because Plaintiff has not satisfied the traditional prerequisites of the common-law rule of issue preclusion, but also because the particular statutory scheme at issue here abrogates the common-law rule of preclusion with respect to judicially unreviewed findings of a state administrative agency.

The Full Faith and Credit Clause in Article VI of the United States Constitution, as implemented by 28 U.S.C. § 1738, generally requires that "federal courts give the same preclusive effect to a State's *judicial* proceedings as would the courts of the State rendering the judgment."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 222 (1985) (emphasis added).  But this rule does not necessarily apply to "judicially unreviewed findings of a state administrative agency."  Astoria Fed. Savings and Loan Ass'n v. Solimino, 501 U.S. 104, 106 (1991) (citing Univ. of Tenn. v. Elliott, 478 U.S. 788, 794 (1986)).

To determine whether to give preclusive effect to *judicially unreviewed* findings of a state administrative agency, federal courts generally look to "whether a common-law rule of preclusion would be consistent with Congress' intent in enacting" the statutory scheme which gave rise to the plaintiff's claims.  Elliott, 478 U.S. at 796; accord Solimino, 501 U.S. at 110.  With respect to claims under 42 U.S.C. § 1983 that do not overlap with the relief available under the IDEA to any degree, both the Supreme Court and the Tenth Circuit have

determined that such a common-law rule is consistent with congressional intent. See Elliott, 478 U.S. at 799; Saavedra v. City of Albuquerque, 73 F.3d 1525, 1534 (10th Cir. 1996).

For several reasons, however, these determinations do not support Plaintiff's motion for summary judgment in this case. First, this Court's prior *Memorandum Opinion and Order* [Doc. No. 52] held that Plaintiff's statutory claims under 42 U.S.C. § 1983 were not viable and that her belated attempt to assert constitutional claims under 42 U.S.C. § 1983 was untimely under Fed. R. Civ. P. 16(b) and D.N.M. LR-Civ. 16.1. In addition, neither the DPHO nor the AAO ruled on each of the essential elements of the due-process claims or equal-protection claim that Plaintiff belatedly attempted to assert under 42 U.S.C. § 1983 in this action. Thus, this case presents no viable, timely claim under 42 U.S.C. § 1983 on which the application of collateral estoppel or other common-law preclusion doctrines could be premised.

Moreover, much of the relief that Plaintiff seeks under the Constitution or other federal laws protecting the rights of persons with disabilities is also available under the IDEA, and the IDEA contains its own set of procedures and requirements for exhaustion of administrative remedies that applies with equal force to such related claims under the Constitution or other federal laws in these circumstances.[4] See 20 U.S.C. § 1415(*l*); Padilla

---

[4]I note that during the administrative proceedings, the AAO issued a *Memorandum Opinion and Order* [Doc. No. 22, Record on Appeal at Tab 36] which documented the extent to which New Mexico's procedures for exhausting administrative remedies under the IDEA overlap with the State's procedures for exhausting administrative remedies under Section 504 of the Rehabilitation Act in this context.

ex rel. Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1274 (10th Cir. 2000) (concluding that exhaustion of the IDEA's administrative procedures and remedies is required whenever they could redress the plaintiff's alleged injuries "to any degree"); cf. Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1066 (10th Cir. 2002) (concluding that "the IDEA's exhaustion requirement will not be excused simply because a plaintiff requests damages"). Because the IDEA subjects all of Plaintiff's related claims to this exhaustion requirement, they are distinguishable from the type of claims under 42 U.S.C. § 1983 that were at issue in Elliott, 478 U.S. at 799, and Saavedra, 73 F.3d at 1534.

In light of this distinction, the Court must consider whether the IDEA's statutory scheme abrogates common-law preclusion doctrines with respect to the judicially unreviewed findings of the AAO, such that they do not have any preclusive effect on Plaintiff's related claims under the ADA and Section 504 of the Rehabilitation Act in this civil action, or to any potential claims under the Constitution or other federal laws that could have been redressed to any degree under the IDEA. Both the Supreme Court and the Tenth Circuit have acknowledged that "some federal statutory schemes" abrogate the federal common-law rule of preclusion. Brockman v. Wyo. Dep't of Family Servs., 342 F.3d 1159, 1166 (10th Cir. 2003); see, e.g., Elliott, 478 U.S. at 795-96 (concluding that judicially unreviewed administrative findings do not have preclusive effect in civil actions under Title VII of the Civil Rights Act); Solimino, 501 U.S. at 112-13 (concluding that judicially unreviewed administrative findings do not have preclusive effect in civil actions under the Age Discrimination in Employment Act).

When the statutory scheme in question requires litigants to exhaust their administrative remedies before proceeding to federal court and sets forth a specific standard by which the state administrative proceedings are to be reviewed by federal authorities, the Supreme Court has concluded that allowing common-law preclusion doctrines to apply to the results of such administrative proceedings "would make little sense." Elliott, 478 U.S. at 795; accord Solimino, 501 U.S. at 111-12. Application of preclusion doctrines would produce an absurd result in this context because if the administrative findings were to be given preclusive effect, then there would be nothing left for a court to review after the administrative remedies were exhausted. Therefore, Congress must have intended to abrogate common-law rules of preclusion when it enacted statutory schemes that require exhaustion of administrative remedies and set forth a specific standard of review applicable to administrative proceedings.

Like the employment-discrimination statutes at issue in Elliott and Solimino, the IDEA requires litigants to exhaust administrative remedies with respect to both IDEA claims and related claims under the ADA, Section 504 of the Rehabilitation Act, the Constitution, and other federal laws. See 20 U.S.C. §§ 1415(i)(2)(A), 1415(*l*); Padilla ex rel. Padilla, 233 F.3d at 1274; Cudjoe, 297 F.3d at 1066. The IDEA also prescribes a specific standard of review that federal courts are to apply to the findings of state administrative tribunals. See 20 U.S.C. § 1415(i)(2); L.B. ex rel. K.B. v. Nebo Sch. Dist., 379 F.3d 966, 973-74 (10th Cir. 2004). In light of these features of the statute, federal courts have declined to give preclusive effect to *judicially unreviewed* findings that state administrative tribunals have issued under

-13-

the procedures set forth in the IDEA.  See, e.g., JSK ex rel. JK v. Henry County Sch. Bd., 941 F.2d 1563, 1567-68 (11th Cir. 1991); Drinker v. Colonial Sch. Dist., 888 F. Supp. 674, 680 (E.D. Pa. 1995), aff'd on other grounds, 78 F.3d 789 (3rd Cir. 1996); I.D. ex rel. E.D. v. Westmoreland Sch. Dist., 788 F. Supp. 634, 641 (D.N.H. 1992).

I likewise conclude that the doctrine of collateral estoppel does not apply to the AAO's decision in this case.  The AAO's decision can have no preclusive effect in this civil action in federal court because the findings contained in that administrative ruling have not been judicially reviewed, and the statutory scheme under which Plaintiff's claims are bundled abrogates the common-law rule of preclusion in this context.  See  JSK ex rel. JK, 941 F.2d at 1567-68; Drinker, 888 F. Supp. at 680; I.D. ex rel. E.D., 788 F. Supp. at 641. It would have made little sense for Congress to include provisions in the IDEA requiring exhaustion of administrative remedies and setting forth a specific standard of judicial review if the results of administrative proceedings conducted under this statute were considered final and afforded preclusive effect before any judicial review had occurred.   Thus, for substantially the same reasons articulated by the Supreme Court with respect to the Age Discrimination in Employment Act and Title VII of the Civil Rights Act, see Elliott, 478 U.S. at 795; Solimino, 501 U.S. at 111-12., I conclude that the judicially unreviewed findings contained in the AAO's decision can have no preclusive effect in this civil action.

Of course, this conclusion does not necessarily bar the application of collateral estoppel or other preclusion doctrines to claims or issues previously decided by a court rather than an administrative agency.  See, e.g., JSL ex rel. JK, 941 F.2d at 1567.  Indeed, courts

in some instances may apply such doctrines to their own prior rulings in the same case. <u>See</u>, <u>e.g.</u>, <u>Indep. Sch. Dist. No. 283 v. S.D. ex rel. J.D.</u>, 88 F.3d 556, 562 (8th Cir. 1996).

Under the current posture of this case, however, there is no claim for judicial review of an IDEA proceeding that could be conjoined with the litigation of Plaintiff's related claims under the ADA or Section 504 of the Rehabilitation Act. Plaintiff's motion papers expressly disclaim any intention to seek judicial review of the AAO's decision. Thus, as discussed earlier in this *Memorandum Opinion and Order*, Plaintiff has abandoned any claim for judicial review of the AAO's decision, and the IDEA does not afford her the right to bring a civil action for such judicial review because she is not "aggrieved" by that decision. <u>See</u> 20 U.S.C. § 1415(i)(2)(A); <u>Robinson</u>, 810 F.2d at 1275. Further, there is apparent need for a court order to "enforce" the equitable relief awarded by the AAO because Defendant EPS has agreed to comply with that award.

Because there is no pending IDEA claim to be subjected to judicial review in conjunction with Plaintiff's related claims under the ADA and Section 504 of the Rehabilitation Act, this case is distinguishable from cases such as <u>Indep. Sch. Dist. No. 283</u>, 88 F.3d at 560 n.3, 562-63. Unlike those cases, this one presents no grounds for applying the doctrine of collateral estoppel, or any other preclusion doctrine, to the Court's own rulings that follow from judicial review of an IDEA claim.

Even if this case were presented in a posture under which the common-law rule of issue preclusion could apply, Plaintiff would still have to satisfy all of the traditional requirements of that common-law rule. The Tenth Circuit and New Mexico appellate courts

are in agreement that there are at least "two prerequisites to the application of [the common-law rule of] collateral estoppel:  (1) the issue to be precluded must have been actually and necessarily decided in the prior case, and (2) the party against whom collateral estoppel is invoked must have had a full and fair opportunity in the earlier case to litigate the issue to be precluded."  Willner v. Budig, 848 F.2d 1032, 1034 (10th Cir. 1988); accord Shovelin v. Central N.M. Elec. Coop., Inc., 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993).[5]  Thus, the doctrine of collateral estoppel "precludes the litigation of only those issues necessary to support the judgment entered in the first action."  Haring v. Prosise, 462 U.S. 306, 315 (1983).

        In this case, I conclude that the AAO's decision does not meet these prerequisites for applying the doctrine of collateral estoppel to preclude Defendant EPS from challenging the essential elements of Plaintiff's claims for monetary damages under the ADA and Section 504 of the Rehabilitation Act.  This conclusion follows from significant differences in the nature and scope of the issues that were actually litigated and necessarily decided in the state administrative proceedings, which in turn affected the fullness and fairness of Defendant EPS's opportunity to litigate in that forum.

───────────────

        [5]The New Mexico Supreme Court has articulated additional requirements which must be satisfied before an administrative agency's decision can be given preclusive effect in a later judicial proceeding.  See Shovelin, 115 N.M. at 298, 850 F.2d at 1001.  I find it unnecessary to discuss these additional requirements here because, as explained earlier, the doctrine of collateral estoppel cannot apply to *judicially unreviewed* findings by a state administrative tribunal acting under the procedures specified in the IDEA in this context, and Plaintiff has not met the other traditional prerequisites for the application of this doctrine.

Plaintiff's *Complaint* specifies four areas in which she allegedly was the victim of unfair discrimination and retaliation as a result of her disabilities:  (1) failure to provide a safe and appropriate classroom environment, (2) failure to provide access to summer school, (3) failure to provide state-mandated assessments and report cards and maintain attendance records, and (4) prematurely disenrolling Plaintiff from her final three years of special education without adequate transition planning after her parent complained about inadequate transportation to and from the school.[6]  [Doc. No. 1, at 3-9.]  Not all of these areas, however, were actually litigated in the administrative proceedings and necessarily decided in the AAO's rulings.

In particular, the AAO dismissed the portion of Plaintiff's claim that was based on the alleged failure to provide access to summer school for lack of jurisdiction because "it did not involve provision or denial of a free public education."  [Ex. A to Doc. No. 43, at 47.]  Thus, the merits of Plaintiff's claim regarding her access or entitlement to summer school was not actually litigated in the administrative proceedings, and there are no administrative findings on this issue which could be given preclusive effect.

---

[6]Plaintiff also separately lists "transition planning" as an area of concern, and the DPHO and AAO both identified this area as one in which violations of the IDEA occurred.  [Ex. A to Doc. No. 43, at 15-16, 19-20, 24, 38-39; Ex. A to Doc. No. 45, at 17-18, 22-26.]  While the alleged deficiencies in transition planning may bear some relationship to Plaintiff's claim of premature enrollment, it is not clear how the AAO's findings concerning transition planning, standing alone, could support an independent claim of discrimination or retaliation under the ADA or Section 504 of the Rehabilitation Act.  Thus, for purposes of this *Memorandum Opinion and Order*, transition planning is not treated as a separate area but is instead considered to fall within the area of premature disenrollment.

With respect to the failure to provide or maintain state-mandated assessments, report cards, or attendance records, the AAO found that Plaintiff "has not shown an adverse educational impact from these events." [Ex. A to Doc. No. 43, at 44.] Thus, the AAO did not find it necessary to award any additional equitable relief with respect to these claims, and there are no findings in Plaintiff's favor on this issue which could be given preclusive effect.

The AAO's decision focused primarily on the areas of classroom safety and premature disenrollment. While these areas were actually litigated in the administrative proceedings, the AAO did not necessarily decide all of the essential elements on which Plaintiff must prevail in order to obtain summary judgment as to Defendant EPS's liability for monetary damages in this civil action.

With respect to the classroom-safety issue, the AAO concluded that Plaintiff was entitled to relief both on the grounds that the unsafe classroom constituted a denial of a free appropriate public education (FAPE) in violation of the IDEA, and on the additional, alternative grounds that the unsafe classroom constituted discrimination within the meaning of Section 504 of the Rehabilitation Act. [Ex. A to Doc. No. 43, at 37, 46, 58-59.] The AAO further subdivided her analysis by finding and concluding that the discrimination arising from the unsafe classroom could be based on either a theory of disparate impact[7] or a theory of intentional discrimination. [Ex. A to Doc. No. 43, at 24, 42, 46-47.] While the

---

[7]The Tenth Circuit has recently ruled that Title II of the ADA recognizes a private right of action for injunctive relief based on a theory of disparate impact. See Chaffin v. Kansas State Fair Bd., 348 F.3d 850, 859-60 (10th Cir. 2003).

AAO may have placed less emphasis on her findings regarding IDEA violations (*i.e.*, denial of an FAPE) than she placed on her findings of discrimination under Section 504 of the Rehabilitation Act, I conclude that the AAO employed both statutes to provide alternative grounds for her ultimate decision on this issue.

With respect to the area of premature disenrollment and its relationship to the earlier transportation dispute, the AAO agreed with the DPHO that the deficiencies associated with Plaintiff's early graduation constituted a denial of FAPE under the IDEA; but the AAO also concluded, contrary to the DPHO's decision, that the early graduation amounted to retaliation under Section 504 of the Rehabilitation Act as well. [Ex. A to Doc. No. 43, at 24, 51, 58; Ex. B to Doc. No. 45, at 18.] Thus, the AAO's finding of retaliation provides an additional, alternative basis for awarding compensatory education to remedy Plaintiff's premature disenrollment.

The AAO did not, however, specify which aspects of this compensatory education award were based on her findings of discrimination or retaliation under Section 504 of the Rehabilitation Act, as opposed to her findings (and those of the DPHO) regarding denial of a FAPE required by the IDEA. Rather, the AAO's decision to increase the duration of the compensatory educational services awarded by the DPHO appears to be aimed primarily at correcting a mathematical error in calculating when Plaintiff would reach the age at which she would no longer be eligible for such services. [Ex. A to Doc. No. 43, at 8 n.3, 59-60.] Correcting this mathematical error bears little or no relationship to any claim of intentional discrimination or retaliation.

Under the common-law rule of collateral estoppel, the general rule is that: "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments, § 27 cmt. i (1983); accord Turney v. O'Toole, 898 F.2d 1470, 1472 n.1 (10th Cir. 1990); Manlove v. Sullivan, 108 N.M. 471, 476, 775 P.2d 237, 242 (1989). Thus, if the AAO's decision in this case is to be treated as a judgment of a court of first instance, then that judgment has no preclusive effect here because it is based on the determination of two or more issues, each of which standing independently would be sufficient to support the result that the AAO ultimately reached.

There is also a more fundamental problem with giving preclusive effect to the AAO's findings regarding intentional discrimination and retaliation. In an earlier stage of the administrative proceedings, the DPHO concluded that she lacked authority to award monetary damages (in the form of a lump-sum payment to a special-needs educational trust). [Ex. B to Doc. No. 45, at 32.] The AAO in turn concluded that Plaintiff had abandoned her challenge to the DPHO's ruling on this issue, and thus both the DPHO and the AAO limited their decisions to the award of equitable relief (in the form of compensatory educational services) and did not address the issue of monetary damages. [Ex. A to Doc. No. 43, at 60.]

The distinction between the equitable relief which the DPHO and AAO were authorized to award in the administrative proceedings and the monetary damages which Plaintiff seeks in this civil action is significant, because claims for monetary damages under

the relevant provisions of the ADA and the Rehabilitation Act require proof of an essential element that is not necessary for purposes of awarding the type of equitable relief at issue in the administrative proceedings. The AAO acknowledged this significant distinction when she determined that: "Separate findings of intentional discrimination or deliberate indifference, which are required to support an award of compensatory damages, need not be made in cases involving only equitable relief under Section 504." [Ex. A to Doc. No. 43, at 43; see also id. at 47.] As a result of this distinction, the AAO's findings regarding issues of intentional discrimination or deliberate indifference were not necessary to her decision, which only involved equitable relief. The AAO's reasoning on this point is consistent with Tenth Circuit authority, which she cited in her decision. See Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999).

Because Plaintiff is the party who will bear the burden of persuasion at trial regarding her claim that Defendant EPS is liable for monetary damages, she may not obtain summary judgment merely by showing undisputed facts on one of the essential elements of this claim. Rather, Plaintiff must show that the record as a whole satisfies *each* essential element of her claim and negates any affirmative defenses in such a way that no rational trier of fact could find that the non-moving party is not liable for monetary damages. See 19 Solid Waste Dep't Mechanics, 156 F.3d at1071; Newell, 912 F.2d at 795; Gagel, 815 F. Supp. at 391. For the reasons set forth above, the doctrine of collateral estoppel does not provide a basis on which Plaintiff can meet this burden.

In addition to invoking this doctrine, Plaintiff asserts that she is entitled to partial summary judgment based on the evidence used in support of the AAO's decision.  The problem with this alternative argument is that such supporting evidence is neither cited in nor attached to her motion papers.  See D.N.M. LR-Civ. 7.5(b) (requiring movants to submit evidence in support of allegations of fact).  Instead, the only "evidence" submitted with Plaintiff's motion is the AAO's decision itself.  [Doc. No. 43.]  This Court cannot conclude based solely on the AAO's decision itself that the findings stated therein have an undisputed factual basis, especially in light of the fact that the DPHO reached many contrary findings based on the same evidence.  Further, since Plaintiff is not a person aggrieved by the AAO's decision and has abandoned any claim for judicial review of that decision under the IDEA, the IDEA provides no basis for the Court to delve into the Administrative Record on its own at this juncture.

Even when the Court has jurisdiction to conduct judicial review of an administrative record, movants are expected to support their arguments with citations to the record.  Cf. D.N.M. LR-Civ. 56.1(b) (requiring that a movant's statement of material facts "refer with particularity to those portions of the record upon which movant relies"); Adler, 144 F.3d at 672 (declining to "comb the record of previously available evidence and make a party's case for it," and concluding that "where the burden to present such specific facts by reference to exhibits and the existing record was not adequately met below, we will not reverse a district court for failing to uncover them itself"); Roska v. Peterson, 328 F.3d 1230, 1246 (10th Cir. 2003) (similar).  In this case, the Administrative Record consists of several volumes of

pleadings and exhibits, as well as transcripts from three and one-half days of evidentiary hearings. In contrast, the statement of facts in Plaintiff's summary-judgment motion contains only citations to the AAO's decision itself, not the underlying evidence in the Administrative Record on which the AAO relies. [Doc. No. 41, at 3-15.] And while some portions of the AAO's decision do contain citations to the Administrative Record, other portions do not. [Ex. A to Doc. No. 43.]

Given the vague manner in which Plaintiff's motion has referenced the evidence in support of the AAO's decision, I conclude that Plaintiff has not met her burden of showing that she is entitled to summary judgment as to liability based on such evidence. I further conclude that due to Plaintiff's failure to provide specific citations to the *evidence* in the Administrative Record (as opposed to the AAO's decision itself), Defendant EPS has not been afforded a full and fair opportunity to respond to this evidence for purposes of determining whether it presents a disputed issue of material fact in this civil action. Accordingly, summary judgment based on the evidence in the Administrative Record is not warranted.

C.     **Defendants' Motions in Limine Regarding Punitive Damages**

Defendants have filed two motions in limine: one pertaining to evidence about punitive damages, the other pertaining to evidence about emotional distress. The resolution of the punitive-damages issue is relatively straightforward in light of this Court's prior rulings and Supreme Court precedent that is directly on point. As a result of this Court's rulings, there are no remaining claims against individual Defendants, and there are no claims

which arise under 42 U.S.C. § 1983.  [Doc. No. 52.]  Thus, it is unnecessary to determine whether punitive damages may be awarded under 42 U.S.C. § 1983 or against an individual defendant in this context.

The only remaining question is whether punitive damages are available with respect to Plaintiff's claims against Defendant EPS for intentional discrimination and retaliation under the relevant provisions of the ADA and the Rehabilitation Act.  I conclude that they are not.

In Barnes v. Gorman, 536 U.S. 181, 189 (2002), the Supreme Court concluded that punitive damages are not an available remedy in a civil action against a public entity under Title II of the ADA and Section 504 of the Rehabilitation Act.  Plaintiff concedes this point in her response.  [Doc. No. 38, at 3.]

Plaintiff contends, however, that she may still seek punitive damages for her retaliation claim under the ADA because the ADA's provisions regarding retaliation are not contained in Title II of that statute.  This contention is meritless.  As explained in the Court's prior *Memorandum Opinion and Order* [Doc. No. 52], the prohibition on retaliation set forth in 42 U.S.C. § 12203(a) does not stand alone from the rest of the statute.  Rather, it is specifically linked to the other provisions of the ADA by 42 U.S.C. § 12203(c), which provides that:  "The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively."

In the context of public services, 42 U.S.C. § 12203(c) simply incorporates the remedies and procedures that would be available under Title II of the ADA in this context. See Van Hulle v. Pacific Telesis Corp., 124 F. Supp. 2d 642, 646 (N.D. Cal. 2000) (citing 42 U.S.C. § 12133).  As stated in Barnes, 536 U.S. at 185, 189, the remedies and procedures available under Title II of the ADA do not include an award of punitive damages against a public entity.

Plaintiff's broad argument that punitive damages are available for any type of ADA retaliation claim against any type of defendant also runs afoul of other provisions of the statute.  With respect to certain types of claims in the employment context, for example, other courts have held that the ADA's retaliation provision does not provide for an award of compensatory or punitive damages.  See Kramer v. Banc of Am. Securities, 355 F.3d 961, 965 (7th Cir.), cert. denied, 124 S. Ct. 2876 (2004);  Boe v. Alliedsignal Inc., 131 F. Supp. 2d 1197, 1202 (D. Kan. 2001).  This holding is premised on the notion that "[t]he ADA borrows remedies from Title VII for retaliation claims in the employment context."  Rhoads v. FDIC, 286 F. Supp. 2d 532, 538 n.2 (D. Md. 2003), aff'd, 94 Fed. Appx. 187 (4th Cir.), cert. denied,  125 S. Ct. 331 (2004); accord Kramer, 355 F.3d at 964; Boe, 131 F. Supp. 2d at 1202.  Plaintiff's argument that the prohibition on retaliation in 42 U.S.C. § 12203(a) is not tethered to the remedies and procedures cited in 42 U.S.C. § 12203(c) contradicts this important premise and would mean not only that punitive damages are available for retaliation in the context of the public services regulated by Title II of the ADA, but also that punitive damages are available for retaliation in the employment context regulated by Title

I of the ADA.  Because both the statutory context and the clear weight of authority indicate otherwise, I conclude that punitive damages are not an available remedy for Defendant EPS's alleged retaliation against Plaintiff under the ADA or Section 504 of the Rehabilitation Act.

It follows that Plaintiff may not introduce evidence at trial solely for the purpose of proving a claim for punitive damages.  As Defendants' motion does not specify any particular item of evidence that they seek to exclude, however, I defer ruling on precisely what evidence will be admitted at trial.  Before I can make such a ruling, the parties must identify the purpose for which the evidence in question is offered.

### D.    Defendants' Motion in Limine Regarding Emotional Distress

Defendants also have moved to exclude evidence regarding Plaintiff's emotional distress or mental anguish.  In support of this motion, they rely primarily on the Supreme Court's reasoning in Barnes, 536 U.S. at 187, in which contract-law analogies are used to define the scope of damages remedies under Title II of the ADA and Section 504 of the Rehabilitation Act.  Defendants' motion seeks to extend these contract-law analogies beyond the actual holding in Barnes.  They argue that since damages for mental anguish or emotional distress are not generally available in an action for breach of contract, see 3 Dan B. Dobbs, Law of Remedies § 12.5(1), at 107-08 & n.1 (2d ed. 1993), these types of damages also should not be an available remedy under Title II of the ADA or Section 504 of the Rehabilitation Act.

Plaintiff presents a number of arguments against extending these contract-law analogies to exclude damages for emotional distress or mental anguish in this case.  In light

of my prior rulings, however, I find it unnecessary to reach several of Plaintiff's arguments. In particular, I need not consider Plaintiff's assertions that evidence to support damages for emotional distress or mental anguish is admissible when offered against an individual Defendant, or for the purpose of establishing a claim under 42 U.S.C. § 1983, or for the purpose of supporting a retaliation claim under the ADA.  These alternative arguments are foreclosed by the Court's prior *Memorandum Opinion and Order* [Doc. No. 52] as well as the discussion above, which does not recognize a difference between the remedies available under Title II of the ADA and the remedies available under the ADA's retaliation provisions in this context.

I also need not determine the scope of damages, if any, that might be available in a case involving only disparate impacts or some other form of discrimination that is not intentional.  Plaintiffs concede that all of their claims for compensatory damages in this case require a showing of intentional discrimination (in the form of "deliberate indifference") or retaliation (which is itself a form of intentional discrimination).  See Powers, 184 F.3d at 1153 (concluding that claim for compensatory damages under Section 504 requires proof of intentional discrimination in the form of deliberate indifference); cf. Jackson v. Birmingham Bd. of Educ., 125 S. Ct. 1497, 1504 (2005) ("Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment.").

Where there is proof of intentional discrimination or retaliation in the provision of public educational services that is actionable under the ADA or Section 504 of the

Rehabilitation Act, I have no difficulty in concluding that the available remedies include damages for specific and genuine instances of mental anguish or emotional distress caused by that discrimination or retaliation.  Under the circumstances presented here, I do not accept Defendants' argument that such remedies are foreclosed by the extension of the contract-law analogies articulated in Barnes.

I conclude that the more appropriate contract-law analogies to apply in this case are those pertaining to contracts for personal well-being.  Courts and commentators have long recognized that when the nature of the contractual duty at issue

> 'is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known from the nature of the contract that such suffering will result from its breach, compensatory damages therefor may be recovered.'

Flores v. Baca, 117 N.M. 306, 311, 871 P.2d 962, 967 (1994) (quoting Lamm v. Shingleton, 55 S.E.2d 810, 813 (N.C. 1949)); accord  3 Dan B. Dobbs, supra § 12.5(1), at 108-14.

In the context of public education, the purpose of federal anti-discrimination statutes is not limited to providing disabled students with a certain level of services or requiring schools to achieve certain results with respect to testing or graduations.  Rather, these statutes also serve to protect students from the harm to their personal well-being caused by being singled out for unfair treatment at school on the basis of their disabilities or in retaliation for protected activities undertaken on their behalf.  In this respect, the pertinent provisions of the ADA and the Rehabilitation Act are more analogous to a contract for

personal well-being than to a commercial contract, and the students themselves are the intended beneficiaries of such provisions.

Because contracts for personal well-being contemplate damages for loss of that well-being in the event of a breach, see 3 Dan B. Dobbs, supra § 12.5(1), at 113, subjecting Defendant EPS to liability for such damages does not offend the Spending Clause principles articulated in Barnes, 536 U.S. at 186-87. Accordingly, I conclude that Plaintiff is not precluded from seeking damages for emotional distress or mental anguish in this case.

I emphasize, however, that there are limitations by which Plaintiff must abide in presenting evidence on this topic. Building on the principles articulated by the Supreme Court in Carey v. Piphus, 435 U.S. 247, 263-64 (1978), other courts have held that: "Compensatory 'damages for emotional distress must be supported by competent evidence of "genuine injury."'" Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1196 (8th Cir.2001) (quoting Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 531 (8th Cir.1999)); accord Giles v. General Electric, Inc., 245 F.3d 474, 488 (5th Cir. 2001). Thus, in order to prevail on such a claim, Plaintiff must offer specific facts as to the nature of her claimed emotional distress and its causal connection to Defendant EPS's alleged violations. See Webner v. Titan Dist., Inc., 267 F.3d 828, 836 (8th Cir. 2001).

In other words, not every tribulation that a student experiences at school gives rise to a legally actionable claim for compensatory damages, and the fact that a student has been subjected to discrimination or retaliation does not, in itself, create a presumption that he or she is entitled to such damages. Rather, Plaintiff must show "'a specific discernable injury

to [her] emotional state, proven with evidence regarding the nature and extent of the harm,'"
Giles, 245 F.3d at 488 (quoting Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th
Cir.1998)), and that specific and discernable injury must be causally linked to intentional acts
or omissions of Defendant EPS which singled her out for unfair treatment because of her
disability or in retaliation for her parent's protected activity undertaken on her behalf.  See
Webner, 267 F.3d at 836.  Further, evidence regarding such emotional distress or mental
anguish may be admitted only on condition that Plaintiff first makes a threshold showing at
trial that this case involves the kind of intentional discrimination (in the form of deliberate
indifference or retaliation) that can support a claim for compensatory damages under the
ADA or Section 504 of the Rehabilitation Act.

Defendants' motion in limine regarding emotional distress is granted in part with
respect to evidence concerning this topic that does not fall within the limitations specified
above and denied in part with respect to evidence that does fall within these limitations.
Again, since Defendants' motion does not identify any specific item of evidence that they
seek to exclude, or any aspect of Plaintiff's damages that might be offset by the AAO's
award of compensatory educational services, I defer ruling on precisely what evidence will
be admitted at trial.  Before I can make such a ruling, the parties must identify the purpose
for which the evidence in question is offered.

## E.      Other Pretrial Issues

Finally, the Court expresses concern over the convoluted path this litigation has
traveled thus far and its potential effect on the parties' planning and preparedness for trial.

As first noted in the DPHO's decision, Plaintiff's counsel "has taken a shotgun approach" to this litigation.  [Ex. A to Doc. No. 45, at 19.]  The claims asserted in Plaintiff's initial pleading before the DPHO included alleged violations of Section 504 of the Rehabilitation Act.  [Doc. No. 22, Record Proper of the Due Process Hearing, at Tab 1.]  After the DPHO issue an adverse ruling on the merits of these Section 504 claims, however, Plaintiff filed briefs challenging the administrative tribunals' jurisdiction to hear those claims.  [Ex. A to Doc. No.  45, at 19, 30-32; Doc. No. 22, Record on Appeal at Tabs 20, 27.]   In ruling on this jurisdictional issue, the AAO noted that "it was [Plaintiff] who pleaded the very Section 504 claims which [Plaintiff] now contends are outside the jurisdiction of the hearing and appeal officer."  [Doc. No. 22, Record on Appeal at Tab 36, Page 2.]

When the AAO reversed the DPHO's ruling on the merits of the Section 504 claims and issued a decision that is more favorable to Plaintiff, Plaintiff again changed her position and asserted that the AAO not only had jurisdiction to hear those claims, but that the AAO's ruling on those claims carries such weight that it now precludes Defendants from disputing their liability for monetary damages on the ADA and Section 504 claims asserted in this civil action.  [Doc. No. 41; Ex. A to Doc. No. 43.]  And when Defendants filed motions seeking to limit the scope of Plaintiff's claims for monetary damages [Doc. No. 32, 33], Plaintiff responded by belatedly attempting to assert new theories which would avoid these limitations and substantially change the nature of the litigation after the relevant pretrial deadlines had passed.  [Doc. No. 36.]

I caution the parties at this juncture that the "shotgun approach" pursued thus far has served to convolute the posture of the case and may provide a source of confusion at trial. The case is now set for a pretrial conference on July 5, 2005, and a jury trial is set on a trailing docket beginning August 9, 2005.  The time has come to bring this case into focus so that the Court and counsel can effectively discuss and define with greater precision what relief Plaintiff is seeking, which claims will be presented to the jury, what evidence will be presented to the jury regarding those claims, and how that evidence will be presented at trial. By no later than the pretrial conference on July 5, 2005, the parties should be prepared to discuss all of these remaining issues so that the trial can proceed in a focused and efficient manner.  In this regard, I again remind the parties of the trial preparation instructions attached to the *Notice of Civil Jury Selection and Trial Date* [Doc. No. 53].

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for summary judgment as to liability is denied, Defendants' motion in limine regarding punitive damages is granted, and Defendants' motion in limine regarding emotional distress is granted in part and denied in part.  In addition, the Court orders the parties to show cause in writing contemporaneously by no later than June 28, 2005, why Plaintiff's claim for an injunction to "enforce" the equitable relief awarded by the AAO should not be dismissed for lack of subject-matter jurisdiction.

**IT IS THEREFORE ORDERED** that *Plaintiffs' Motion for Summary Judgment as to Liability* [Doc. No. 41] is **DENIED**.

-32-

      **IT IS FURTHER ORDERED** that *Defendants' First Motion in Limine to Exclude Evidence Relating to Emotional Distress* [Doc. No. 33] is **GRANTED IN PART** and **DENIED IN  PART** under the conditions specified above.

      **IT IS FURTHER ORDERED** that *Defendants' First Motion in Limine to Exclude Evidence Relating to Punitive Damages* [Doc. No. 32] is **GRANTED**.

      **IT IS FURTHER ORDERED** that each of the remaining parties shall show cause in writing by no later than June 28, 2005, as to why Plaintiff's claim for an injunction to "enforce" the equitable relief awarded by the AAO should not be dismissed without prejudice for lack of subject-matter jurisdiction.

      **SO ORDERED** this 21st day of June, 2005, in Albuquerque, New Mexico.

 

**M. CHRISTINA ARMIJO**
**UNITED STATES DISTRICT JUDGE**